## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

Carol Byers, individually and on behalf of all
others similarly situated,

|  |  |
|---|---|
| Plaintiff, |  |
| - against - | Class Action Complaint |
| Aldi Inc., |  |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      Aldi Inc. ("Defendant") manufactures, markets, labels, and sells coffee whitener identified as a coffee creamer under the Barissimo brand ("Product").

2.      Most coffee drinkers add milk in various forms to soften this beverage's naturally strong taste.

3.      These products range from skim milk, which has a lower fat content than regular milk, to heavy cream, with a higher fat content.

4.      Cream is defined by Merriam-Webster and other dictionaries as the thick part of milk that rises to the top, containing fat.

5.      Regulations established by the Food and Drug Administration ("FDA") and adopted by this State, define cream as "the liquid milk product high in fat separated from milk, [with] not less than 18 percent milkfat." 21 C.F.R. § 131.3(a).

6.      Coffee cream is a specialized dairy product made for whitening coffee and "contains not less than 18 percent but less than 30 percent milkfat," with added sweeteners and/or flavorings. 21 C.F.R. § 131.155(a).

7.     The Product's flavors include hazelnut.



8.     The front-and-center statement of identity tells purchasers they are buying coffee creamer. 21 C.F.R. § 101.3(b).



9.     A statement of identity must be (1) a name required by law or regulation, (2) a common or usual name or (3) an appropriately descriptive term. 21 C.F.R. § 101.3(b)(1)-(3).

10.    No federal law or regulation requires the Product be identified as a "Coffee Creamer."

11.    "Coffee Creamer" is not the Product's common or usual name because it is not

uniform among all identical or similar products and is confusingly similar to other products labeled as "coffee creamer" which are based on dairy ingredients such as cream. 21 C.F.R. § 102.5(a).

12.    For example, the three products below are all described as "coffee creamer" like Defendant's Product.



13.    However, the above products are what consumers expect and the law requires when a food is labeled "coffee creamer" because they are made with cream, a dairy ingredient.

14.    The Product's representation as a "Coffee Creamer" is misleading because it lacks cream or dairy ingredients beyond a *de minimis* amount of sodium caseinate.



**INGREDIENTS**: WATER, SUGAR, SOYBEAN AND/OR PALM OIL, AND LESS THAN 2% OF SODIUM CASEINATE (A MILK DERIVATIVE)**, NATURAL AND ARTIFICIAL FLAVORS, DIPOTASSIUM PHOSPHATE, SODIUM STEAROYL LACTYLATE, POLYSORBATE 60, DATEM, SODIUM PHOSPHATE, SODIUM CITRATE, CELLULOSE GEL, CELLULOSE GUM, CARRAGEENAN, COLOR ADDED.
**NOT A SIGNIFICANT SOURCE OF LACTOSE.
**CONTAINS: MILK, SOY.**

15.     In place of cream, the Product substitutes water and soybean and/or palm oil, the first

and third ingredients, to reduce costs.

16.     The Product is not labeled in a way that distinguishes it from coffee creamers made

from cream, through conspicuous statements such as "non-dairy" or "a vegetable product –

contains no milk or milk fat."

17.     Nor does the label use the generic term "coffee whitener," which does not reference

"cream" but describes its function in a non-misleading way.

18.     The name of "coffee creamer" applied to products without cream has not been

established by common usage. 21 C.F.R. § 102.5(d).

19.     Cream is known for its "creamy" taste because milkfat contains hundreds of lactones,

aroma compounds which contribute to its taste.

20.     The name "coffee creamer" is almost identical to "coffee cream," defined by the

FDA as a dairy product.

21.     Federal and state law prohibit a food from purporting to be one for which a definition

and standard of identity exists. 21 U.S.C. § 343(g).

22.     For example, the FDA warned a company that by describing its product as "Just

Mayo," made without eggs, consumers may be misled to expect the standardized food mayonnaise,

which contains eggs.

23.    That the product in question was described as "mayo" while the standardized food was "mayonnaise" made no difference, because like "coffee creamer" and "coffee cream," consumers use these terms interchangeably.

24.    The "mayo" and "coffee creamer" each contained ingredients not permitted by the standards for mayonnaise and coffee cream, like modified food starch and palm oil, in contrast to decades of consumer familiarity with ingredients for standardized foods.

25.    Consumers value coffee cream over non-dairy coffee whiteners because milkfat contains hundreds of aroma compounds, or lactones, which provide its "creamy" taste.

26.    Consumers value cream over non-dairy coffee whiteners for its nutritive benefits.

27.    Research indicates fats in dairy ingredients do not increase the risk of cardiovascular disease or increase cholesterol, in contrast to vegetable oils like soybean and palm oil.

28.    Dairy ingredients like cream contains protein, calcium and vitamins A, D, E, and K, absent from vegetable oils like soybean and palm oil.

29.    Defendant makes other representations and omissions with respect to the Product which are false and misleading.

30.    As a result of the false and misleading representations and omissions, the Product is sold at for a price premium, approximately no less than no less than $2.75 for 32 FL OZ (946 mL), excluding tax and sales.

## JURISDICTION AND VENUE

31.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

32.    The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

33.    Plaintiff is a citizen of Florida.

34.    Defendant is an Illinois corporation with a principal place of business in Illinois.

35.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

36.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, from Defendant's retail stores and website, in the States Plaintiff seeks to represent.

37.    Venue is in this District with assignment to the Fort Lauderdale Division because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in Broward County, including Plaintiff's purchase, consumption and/or use of the Product, and awareness and/or experiences of and with the issues described here.

## PARTIES

38.    Plaintiff Carol Byers is a citizen of Plantation, Broward County, Florida.

39.    Defendant Aldi Inc. is an Illinois corporation with a principal place of business in Batavia, Kane County, Illinois.

40.    Aldi is the common brand of two German-owned supermarket chains with over 10,000 stores in 20 countries and annual sales exceeding $75 billion.

41.    Defendant operates more than 2,000 stores across 36 states.

42.    Defendant is known for selling the highest quality goods, based on its "no frills" approach which saves costs, that are passed on to the consumer.

43.    While Aldi stores sell leading national brands, they sell a large number of products under one of their private label brands, Barissimo.

44.     Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

45.     Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

46.     Products under the Barissimo brand have an industry-wide reputation for quality and value.

47.     In releasing products under the Barissimo brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

48.     Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

49.     That Barissimo-branded products met this high bar was proven by focus groups, whichrated them above the name brand equivalent.

50.     Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

51.     A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

52.     Private label products under the Barissimo brand benefit by their association with consumers' appreciation for the Aldi brand as a whole.

53.     The development of private label items is a growth area for Aldi, as they select only top suppliers to develop and produce Barissimo products.

54.     The Product is sold in Defendant's retail stores and website.

55.     Plaintiff purchased the Product on one or more occasions within the statutes of

limitations for each cause of action alleged, at locations including Aldi, 12190 W Sunrise Blvd, Plantation, FL 33323, between 2021 and 2023, among other times, at or around the above-referenced price.

56.    Plaintiff believed and expected the Product contained cream, a dairy ingredient because that is what the representations and omissions said and implied, on the front label and/or the absence of any reference or statement elsewhere on the front label.

57.    Plaintiff was aware of and saw other products represented as "coffee creamer" which were based on cream and not vegetable oils.

58.    Plaintiff paid more for the Product that she would have had she known the representations were false and misleading, as she would not have bought it or paid less.

59.    Plaintiff chose between the Product and others represented similarly, but which did not misrepresent their attributes and/or components.

60.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its attributes and/or composition.

61.    Plaintiff is unable to rely on the labeling of not only this Product, but other similar coffee whiteners because she is unsure whether their representations are truthful.

## CLASS ALLEGATIONS

62.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Georgia, Kentucky, Louisiana, Tennessee, and West Virginia, who purchased the Product during the statutes of limitations for each cause of action alleged.

63.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

64.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

65.     Plaintiff is an adequate representative because her interests do not conflict with other members.

66.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

67.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

68.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

69.     Plaintiff seeks class-wide injunctive relief because the practices continue.

### CAUSES OF ACTION

### COUNT I

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

70.     Plaintiff incorporates by reference preceding paragraphs 1-30.

71.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

72.     Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

73.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that it contained cream, a dairy ingredient.

74.     The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Product contained cream, a dairy ingredient.

75.     Plaintiff and class members relied upon these representations in deciding to purchase the Product.

76.     Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

77.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

78.     Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

79.     Plaintiff and class members are entitled to damages in an amount to be proven at trial.

80.     Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that the Product does not contain cream, a dairy ingredient.

## COUNT II

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

81.     Plaintiff incorporates by reference preceding paragraphs 1-30.

82.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or

deceptive business practices in the conduct of commerce.

83.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

84.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

**COUNT III**

**False and Misleading Adverting,**
**Fla. Stat. § 817.41**

85.     Plaintiff incorporates by reference preceding paragraphs 1-30.

86.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

87.     Defendant made misrepresentations and omissions of material fact, that the Product contained cream, a dairy ingredient, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

88.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

89.     Defendant knew that these statements were false.

90.     Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

91.     Plaintiff and class members did in fact rely upon these statements.

92.     Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

93.     As a result of Defendant's misrepresentations, Plaintiff and class members suffered

damages in the amount paid for the Product.

94.   Plaintiff and class members are entitled to damages and injunctive relief as set forth above.

**COUNT IV**

**Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.**

95.   Plaintiff incorporates by reference preceding paragraphs 1-30.

96.   The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained cream, a dairy ingredient.

97.   Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

98.   Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

99.   Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained cream, a dairy ingredient.

100.  Defendant's representations affirmed and promised that the Product contained cream, a dairy ingredient.

101.  Defendant described the Product so Plaintiff believed it contained cream, a dairy ingredient, which became part of the basis of the bargain that it would conform to its affirmations and promises.

102.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

103.   This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high-quality products.

104.   Plaintiff recently became aware of Defendant's breach of the Product's warranties.

105.   Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

106.   Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

107.   The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

108.   The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained cream, a dairy ingredient.

109.   The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained cream, a dairy ingredient, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

## COUNT V

## Negligent Misrepresentation

110.   Plaintiff incorporates by reference preceding paragraphs 1-30.

111.   Defendant had a duty to truthfully represent the Product, which it breached.

112.   This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high-quality products.

113.   These representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first that Defendant has been known for.

114.   These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

115.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

116.   Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

## COUNT VI

### Fraud
### (Fed. R. Civ. P. 9(b) Allegations)

117.   Plaintiff incorporates by reference preceding paragraphs 1-30.

118.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained cream, a dairy ingredient.

119.   The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

120.   Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

121. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

122. WHO: Defendant, Aldi Inc., made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing that the Product contained cream, a dairy ingredient.

123. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product contains cream, a dairy ingredient.

124. Defendant omitted from Plaintiff and class members that the Product does not contain cream, a dairy ingredient.

125. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions.

126. Yet, Defendant has and continues to represent that the Product contains cream, a dairy ingredient.

127. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product contained cream, a dairy ingredient, continuously throughout the applicable Class period(s).

128. WHERE: Defendant's material misrepresentations and omissions, that the Product contained cream, a dairy ingredient, were located in the advertising and marketing of the Product.

129. The Product is sold from Defendant's retail stores and website.

130. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that it contained cream, a dairy ingredient.

131.  As such, Defendant's representations are false and misleading.

132.  And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

133.  WHY: Defendant misrepresented that the Product contained cream, a dairy ingredient, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium.

134.  As such, Defendant profited by selling the misrepresented Product to at least thousands of consumers throughout the nation.

## **COUNT VII**

## **Unjust Enrichment**

135.  Plaintiff incorporates by reference preceding paragraphs 1-30.

136.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Injunctive relief to remove, correct and/or refrain from the challenged practices;

3.  Awarding monetary, statutory and/or punitive damages and interest;

4.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5.  Other and further relief as the Court deems just and proper.

Dated:   January 25, 2023

                                      Respectfully submitted,

                                       /s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

Sheehan & Associates, P.C.
Spencer Sheehan (*Pro Hac Vice f*orthcoming)
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com